Good morning, Your Honors. May it please the Court, Matt LeDoux on behalf of Appellant David Reed. This appeal is about a pro se IFP litigant's access to the courts. Mr. Reed's extensive service efforts went far beyond what Section 1915 and this Court's precedents require of an incarcerated IFP litigant, and the District Court abused its discretion in concluding otherwise. Indeed, the District Court itself found that Mr. Reed had satisfied his burden when it ordered the marshals to effect service, a clear determination he had met his obligations, and he did not somehow later unmeet them. In other words, after Mr. Reed had satisfied his burden, he was not under a continuing duty to provide the marshals with up-to-date information regarding the former prison guards he's suing for allegedly beating him. No Court has ever held this— I have a question about Walker. Of course, Your Honor. So I agree that it's binding precedent, and I agree that there's certainly a sentence that is fully supportive of Mr. Reed, that so long as he identifies the defendant and the marshal service fails to serve, that's automatically good cause under Rule 4. Is there any chance that that language is dicta because the Walker Court found there was no abuse of discretion in that case, and in the very next sentence, they have a sentence which sort of seems to imply that the inmate has to provide more information other than the identity? So I understand what you're saying, Your Honor. I believe that Walker stands for the proposition that the plaintiff there— I mean, that terse paragraph you're describing of analysis says only that he failed to provide the information necessary to serve, and as we read Walker and as the Sellers Court read Puyett, Walker reads Puyett and quotes the language from Sellers reading Puyett to say that the information necessary to serve is the same as the information necessary to identify. And it does switch back to that language in the analysis, but in announcing what the law and the standard that it's applying is, it says information necessary to identify, and we think that's sufficient. Either way, we think Mr. Reed provided information necessary for the marshals. Under either one of those standards, were the court to pick one necessary to identify or serve these defendants who were both former prison guard officials and who, using the marshals' resources, should have been easily locatable. But the district court judge has an obligation to manage the trial for all of the defendants. Absolutely, Your Honor. And this case said the judge had granted summary judgment and was ready to go to trial for the other defendants who had been served. So what's the obligation of the judge at that point? In other words, we have to get ready for trial. In addition to that, discovery had closed, correct? Yes, exactly. And your client had engaged in any discovery whatsoever? I don't know whether he engaged in no discovery whatsoever, but certainly nothing remarkable that I'm aware of, Your Honor. Okay. But the judge had an obligation after two years to do something with this case, right? Sure. So doesn't that also affect the issue of whether or not the judge acted in good faith in going forward? So I think we're talking about—I think Your Honor is getting at the prejudice element, perhaps, because the district court's dismissal of these litigants did occur well before trial. The state has suggested that that error could have been cured by asking for a continuance, for example. We don't believe that's the case. Our contention is that the dismissal of these defendants impacted Mr. Reed's ability to present his entire case, including as to the—Officer Karski, who was the alleged instigator of the alleged retaliatory beating. And by depriving him of that opportunity early on in the case, when trial counsel came on and trial counsel was appointed specifically for trial purposes only, that's a district court docket, ECF-41. I'm sorry, I don't have the ER site. But I can represent to the court that in speaking with Mr. Reed's trial counsel before—to prepare for this argument, she did not view it as her role to attempt to reopen a matter that the district court had already ruled on, by our count, about six times. And it's also a little cavalier, we think, of the state to suggest that the subpoena or a continuance could have solved the problem because, A, they would have been there as witnesses, not parties, when they were properly sued as parties and should have been there as parties to present the full case. And, B, the marshals would have had to serve the subpoena anyway. And on this record, we're not confident that they would have been able to do so. So to your Honor's question about when the district court should continue and where we should draw the line here, we are not asking, to use the language in Penton, that you draw some fine line or cabin the district court's discretion in some way. But we are asking that the marshals do something more than at the end of this say, we were directed to a new location, we're not going to tell you what that is, and that's the end of it. But I think Judge Silver's question not only goes to the prejudice, but also goes to whether the district court committed an abuse of discretion in dismissing the complaint in the first place. Right? If the marshals, I understand they had that sheriff's records office, they could have gone another time. But they did make five attempts to effectuate service here. And as Judge Silver says, by the time the district court dismissed the case, it had already been pending, what, two years and five months? Sure. The district court had already ordered the attorney general to provide these two defendants' addresses. And Mr. Reed didn't respond to an order to show cause for five months. So as you said, this is a discretionary decision on the part of the trial court. Even the cases you cite say, hey, we're not requiring you to have endless service attempts. We're just saying make a decision as to whether the attempts were reasonable, reasonable effort by the marshal service. So why couldn't we find here that after five attempts, two years, five months, an OSC that's not responded to in five months? Sure. Just doesn't meet the abuse of discretion standard. Sure. Your Honor, every time the district court, you're right that Mr. Reed had many opportunities to make his case to the district court. But every time it asked him to do so, it was erring. It was asking him to provide information that he had no access to. There was no reason, for example, we don't believe there's a reason to hold against Mr. Reed the need to get a document subpoena to get on the Nye County Sheriff's Department. This isn't a case like Penton where the marshals were ordered to redouble their service efforts and do conduct further research. And this court still reversed. I acknowledge that Penton is an unpublished case. But as other cases make clear, for example, Judge Easterbrook-Seller's decision noted, pro se litigants often get the runaround. And I think this is a great example of a case where a pro se litigant is getting the runaround. And I think the abuse of discretion here was not asking the marshals at any point to do more than they did. It was always asking Mr. Reed. Yes, Your Honor. So the State takes a little bit different tack, as I understand it. I mean, they're not, I don't see them as arguing necessarily that there's a Walker violation. But rather, it's a failure to respond to the OSC, which puts it in a different category. Why doesn't the failure to respond to the OSC play into here, and we've reviewed that, as opposed to the straight Walker analysis? Well, Your Honor, I think the OSC issued only because of the district court's repeated errors that I've mentioned. Right. But, I mean, he could have said, yeah, I can't provide it. That's my response. But he didn't respond at all. So they cite Hazen, which is slightly different, but has some similarities. Hazen wasn't a prisoner, incarcerated prisoner case. It was a pro se against. Right, right. Yeah. That was the doctors doing the medical part.  And so. And I was on the Hazen panel, so. Of course, yes, Your Honor. Your Honor, again, the failure to respond to the order to show cause, the order to show cause never should have issued. That's our position. The fact that it issued it all was, again, as a result, it would not have issued if at any point in this case the district court had said, hey, marshals, can you please do more? Before, on summary judgment, sticking the OSC into the order and asking Mr. Reed to provide more information, it was already clear. But earlier in the case, in granting Reed's request for a subpoena, the district court had already remarked it was obvious that Mr. Reed doesn't have access to Officer Karski's at least information. So I'm not sure what the point of the OSC was. But that was the argument in Hazen. He said, I decided I was going to drop them, but now that the state's out, I want them back. And you said, well, didn't respond to it, so that's the end of it. Regardless of the reasons. Your Honor, I would just say that I do believe that Hazen, at least that seems to have been a strategic choice. And there's no evidence on this record that Mr. Reed wanted anything other than all five defendants present as his trial. There is, I'm not going to excuse a failure to respond to an OSC, but he was moving prisons at the time. In his eventual late response, he explained why he was late. The district court just said that it was too little too late, I believe was the language used. So hypothetically, let's say that the judge didn't dismiss it, but at that point it's obvious there was tremendous error or there were tremendous amount of problems trying to locate these people so they could be served. So the alternative would have been publication, right? Yes. Okay. I believe so, Your Honor. And so if the publication didn't occur, and likely that's where we would have ended up, right? Well, Your Honor, I don't have any reason to think we would have needed publication here. Why? Because the marshals, there's nothing on this record that indicates the marshals ever did anything to look for these search service databases, did anything, went to the- Okay, that's interesting because that's the very thing I was going to ask you because I didn't see it in the record is that you felt there was a greater affirmative effort that had to be made by the marshals. When does it stop such that it seems to me in this case they did quite a bit to try to find these individuals. What didn't they do that was brought to the attention of the marshals, of the court, that would have defeated the dismissal so that the judge would have said, yeah, I can't dismiss it now because there hasn't been enough. I don't see that from the record. Sure, Your Honor. I think a simple search of their databases, this is the country's premier finder of people who don't want to be found. There's no indication that these two former state prison guard employees were hiding, that they didn't want to be found, that a simple search of what resources are available to the marshals couldn't have located them. And again, we don't want to ask you to cabin the district court's discretion, but we do think it would be, at least on this record, the district court always turned back to Mr. Reed. It never asked the marshals to do anything. And we'll just say that's not enough. If that's the rule, at least asking them to do it once would have been doing some kind of research, having something in the record that indicated that they had looked for them or had pursued the new location they were directed to. So remind me, in the record, was there a request by your client for them to do such, to check the databases? Oh, Your Honor, I understand. That sounds like a good idea. But I just don't know that that's something that your client requested, or maybe he didn't know. Your Honor, I don't know about it in that specific language. I wouldn't represent to you that he had made it in that. But I would say the character of his filings was frustration and clear acknowledgement that the marshals had more resources than he did. And did you think that your client brought it to the attention of the judge? They haven't done enough. Yes, Your Honor. I believe that every time he responded to the court, I believe he made that clear. But he didn't tell them how. And as a matter of law, do you think that the judge should have ordered them to do that, to check the databases? Again, I don't want to tell the court that in every case they have to do, they have to take X action. But here, I would say absolutely, that would have been, I just can't think of a reason why they wouldn't have done that. And so that would have been required of the judge to do before your client would suggest publication. As I understand it, your client was looking into publishing. Yes, that is correct, Your Honor. He was doing it himself, which we also think is another indicator of the error and sort of the fact that the marshals had done very minimal work here. And I see I'm well over time, so if I could, I'd like to... I'll give you two minutes. Thank you so much, Your Honor. Good afternoon, Your Honors. I'd like to thank the court for the opportunity to address my arguments to the panel. The jury properly rendered a verdict in favor of Sergeant Stubbs, Sergeant Rivera, and Officer Dictus because they did not violate the Eighth Amendment. As these officers were not involved in the use of force, and the officers involved properly applied force to read an inmate once he punched an officer and became combative and struggled to prevent officers from trying to restrain him. Reed points to no error by the district court, much less trial error, and fails to cite any legal authority which would even imply such error. Reed cites no authority for the argument that a jury verdict in favor of defendants may be reversed because some other alleged co-defendant previously had been dismissed from the case because plaintiffs admitted failure to respond to an order to show cause for lack of service. So, question. You filed an amicus brief on behalf of Karski and Cora Ligardo even though the state had declined to represent them. So, isn't it unfair now for you then to effectively file a merits brief on behalf of those absent defendants? And then who are you representing today? Are you representing the three defendants or are you representing also Karski and Cora Ligardo? Here I am representing the three defendants that went to trial. I am also representing the state of Nevada, who is the amicus in this case. I am not representing the two defendants because it would be unethical for me to represent them because they have not requested my representation. I can't represent people who do not request my representation. But if the state declined previously to represent Karski and Cora Ligardo, how can you now file an amicus brief that basically is acting as their counsel? How is that? Your Honor, I would disagree with you that we're acting as their counsel. We're acting as amicus. And we're entitled to act as amicus as a matter of right because states have a right to act as amicus by statute. And therefore, we're exercising our right to act as amicus. And I'm just being – because an amicus is – what it is, of course, is in front of the court. There's nobody here to talk about, you know, whether or not these people should be defended. And in times past, it used to be the Ninth Circuit, when these kind of issues arose, it used to be that they reached out to the State to act and file an amicus brief. For example, say there were no other defendants in this case, and all you were talking about was a lack of service. But wouldn't those same arguments apply when the State declined to represent them? No, no, Your Honor, because – The same arguments would – the same concerns would still be there, right? No, no. There's no one here to represent that point of view. No. Oh, sorry. Go ahead, please. Like I said, Your Honor, it would be unethical to do it because they had not – we have not been able to – we ourselves have not been able to contact them. They have not – they have not – we do not have their forwarding address. We have not contacted. And therefore, they have not requested us to represent them. We cannot represent somebody and act as their counsel without their permission to do so, State or anybody else. That would be just an – it would be an ethical violation that would get you disbarred. Let me ask you, Counsel. I don't see anything in the record that indicates that your clients would have been prejudiced if a continuance had been granted by the district court judge to further attempt to locate the two missing defendants. I would disagree, Your Honor, that there were – Well, is there anything in the record, Counsel, is what I'm asking? Because I didn't see it in the record. Have I missed it? Well, I mean, other than that this case has been going on, it's been – it's been 15 months since the time when they – I'm asking is there anything in the record. That is the record. Counsel did say, for example, the State's counsel come forward and say, you know, we've got to get this thing going, Judge. We don't want to wait until you've – you've issued an order to show causeway. The other defendant shouldn't be dismissed. And we agree with that. They should be dismissed. Our clients need to go forward. Anything in the record? Well, no, because I think that this was pushed forward by the court, not by our office. The court's saying that, hey, we've been – we've now had 15 months since these people have been dismissed. We've gone through discovery. They wanted – the court wanted to have a trial because, Your Honor, it's very much aware that the rules of civil procedure now are in effect, that they want these things to move more spontaneously. Usually, you know, you have six months for discovery and go forward. But your position wasn't, wow, we're going to not be able to get our witnesses here, this – the delay has been so long that our clients are really denied due process. You never claimed that. We didn't claim that because it wasn't an issue raised by the opposing party that they wanted to delay trial. I mean, we may have raised it if they – if they came up with some argument and said, hey, we want to continue this because of these things. And trial counsel, who I was not trial counsel, so I can't speak on their behalf, but I could very much imagine that trial counsel would say, hey, you know, this case has gone on long enough. We want to do it. They've had 15 months to locate these people. He's had – they had trial counsel. They have counsel here. And they claim still. They don't know where they are. So it's just a little bit disingenuous to say that the marshals could have found them when there's two trial counsels who says that they can't – that they still don't know where they are. And I would also point out that, you know, what they're arguing is would have disastrous consequences. You know, defendants are dismissed throughout litigation for failure to serve by district court screening orders, by motions to dismiss, by motions of summary judgment. If – if trial could be overturned because a defendant was previously dismissed, even improperly, trial would become expensive waste of time, squandering the resources of both this Court and the defendants. Who is this? But let me ask you. The – the marshal service were given a new location, the Sheriff's Office Records facility on Basin Road. It was closed. They went there one time when it was closed, and they never went back. How is that reasonable effort? How is it reasonable effort for – okay. First of all, that was not a trial subpoena, okay. That – I mean, that was not a – that was not a service subpoena. That was a subpoena – that was a subpoena for records from the parties, from – on behalf of the parties. And I – my personal opinion, reading this record, is that – that I don't believe that the marshals, when it comes to those kind of subpoenas, has any obligation to locate anybody. They – they just go out and with – when it's – when it's not a – So this – so this subpoena was for documents evidencing the last known mailing and residential addresses of former Deputy Sheriff Paul Karski. Yes. So it would have been highly relevant documents, and they were directed to Sheriff's Records Department, and they never went back, even though they were just given a new place to go to get exactly that information. So how is that reasonable effort? How is that – well, Your Honor, because, like I was saying, in the case – in the case when it's not the subpoena to subpoena the actual parties, but a subpoena for evidence or, for example, the addresses here, I think that the marshal's office doesn't have the same obligation as they do with respect to trial subpoenas. But, Your Honor, I – In what cases? You know, Your Honor, I – I mean, you're making a pretty bold statement here, a broad statement, that marshals don't have any duty. My case –  I don't, but it's just my – my reviewing of the cases with respect to that these issues have only been raised, only been raised with respect to subpoenas for serving a complaint. I've never seen – and that's the thing. I've never seen a case where it was for a trial – for an evidentiary subpoena. So, I mean, in your view, the marshal can say, yeah, we don't have to try very hard, it's only a subpoena? No, no, Your Honor. I mean, that's your argument. No, but they have to have the correct address, though. And in that particular case –  And that's what I think happened here, is the – Well, they weren't so hard. Those kind of evidentiary subpoenas cannot be just served on an office. They usually have to be served by statute on certain personnel. And that's what I believe happened here. I know the record is kind of murky in that particular instance. But the thing is, I think we're getting far afield because – So you're saying a subpoena to get an address to serve a trial subpoena is inferior and doesn't come with the same obligations as the subpoena to serve the trial subpoena? That's correct, Your Honor. That's my position.  Well, why don't you show me where in Walker, in Puit, that that proposition exists? Okay. Well, because none of those cases – I can't show you in any of those cases because none of those cases raise that issue. I'm going to look at the statement in Walker. So long as a prisoner has furnished the information necessary to identify the defendant, the marshal's failure to effect service is automatically good cause within the meaning of Rule 4. I don't see anything in there that says effect service of a complaint and service of process. It just says effect service. Right. I know, but, Your Honor, you have to go under the lay of facts. There was no fact suggesting that there was a subpoena for records. I mean, that's all I can say, Your Honor. But if you want to go to the Walker case, though, Your Honor, Walker is full on point with this, because in the Walker case what happened was is there was an order to show cause, just like there was in this case. But in that case, guess what happened? The defendant responded to the order to show cause. And even though the defendant responded, which admittedly didn't happen here, the court said the defendant didn't meet his obligation of identifying enough information to have the person serve to the proper address. So I guess that's the other point, I guess, going on with your point, Judge Koh, that, for example, that he didn't provide enough information to serve the right party with respect to getting a records request, if you want to bring it out further along the Walker Alliance. He didn't provide enough information. He didn't provide the proper place to get those kind of records. Your Honor, I see my time has expired. I have no further questions. Let me see if my colleagues do. Just one question. I just want to make sure on this issue. So you are the counsel representing the State, knew full well that there was an order to show cause concerning the two other defendants. No response. Did you ever, on behalf of the State, take a position on that? So you were taking a position. Say, for example, that often happens in trial, and I'm somewhat repeating myself. We need to go to trial, Judge. We need this to go forward. Or did you decide it really didn't make any difference? We'll go to trial whenever. And it was a year later. Discovery had been concluded. So were you silent on that issue such that the judge didn't, wasn't concerned, at least from your perspective, or the defendant, the other defendants who were going to trial's perspective, I need to move this on? Your Honor, I'm not specifically recall exactly what the record, but the best of my recollection is that this was the trial courts wanting to move the case forward. And we did, and I can't say because I wasn't trial counsel below, but generally my policy is that in these cases that, you know, that I'm not out looking to get parties dismissed for failure to serve. You know, we do our best to try to give the last known address, provide parties. And, in fact, if we try, if we can contact, if we could have contacted these officers and they would have responded to us and requested representation, we would have accepted service on their behalf. There wouldn't have been a service issue because we would have done it. Because that's our policy in our office, Your Honor. Well, they really weren't too hard to find. What? They really weren't too hard to find. I mean, there was a press release about one of them being appointed a deputy sheriff in Arizona. Right. It was out there in the public. All you had to do was Google it. I don't know if that Google site was there at the time when we were doing the search, Your Honor. All I can tell you is that our office, I can make assurance as your office, we make great efforts to try to contact these individuals and try to get so we can represent them in litigation. We would prefer to represent the individual defendants rather than, and we would prefer to accept service on their behalf. But when we can't contact them or they don't respond to our request for representation, we can't force them to say, yeah, we want you to represent us. I'm not quarreling with you. I'm just saying they weren't too hard to find. That's what I'm just saying. I'm just trying to make a point. Thank you, Your Honor. I respectfully request that you affirm the district court in all respect. All right. Thank you. Your Honor, just a few points. The dismissal here affected the entire case landscape. It was based on an alleged conspiracy to retaliate against Mr. Reed. Whether Officer Karski properly initiated a use of force incident was critical to all of the officers present. Let me ask you a question. Of course. I still am focused on this abuse of discretion. The cases that support your position seem factually distinguishable. In Puitt, the Marshal Service failed to comply with the federal rules of civil procedure. They failed to serve the U.S. Attorney General when these were federal defendant officers. They didn't do individual service when they didn't get the acknowledgement of mail service. The other cases, there's only one attempt at service, I think, in the Graham case. In Sellers, the inmate provided the address for the former warden. The other people were current U.S. Bureau of Prisons officers. I see the language in Walker is very favorable to Mr. Reed, but I do wonder about with the facts here. You've got this OSC. You've got these five attempts. Why would we still find abuse of discretion here? Your Honor, I think it's distinguishable, but I think it's distinguishable in our favor. I think all of those cases present situations where the litigant did far less than Mr. Reed did here. And, again, I have to reiterate that every time the Marshals failed to discharge their obligations, the district court returned to Mr. Reed, despite knowing they kept asking him, give the Marshals more information. You tell them what to do, not, hey, Marshals, why aren't you going out and doing more research? And, again, I'll point you back to Penton, which I acknowledge is unpublished, but the district court there, I think properly, ordered the Marshals to conduct further research, ordered them to redouble their efforts. As you pointed out, they had a location they could have gone to, and there's no evidence that they did anything with that information and beyond, including providing it under seal, the actual address to the court. So I apologize. I see I'm going over time again. So I would just respectfully request that the court reverse the order of dismissal, vacate the judgment as to the remaining defendants, and remand for further proceedings, including reopening, discovery, and a new trial, if Your Honors have no further questions. Let me see if my colleagues have camera. Okay. Thank you very much. Thank you very much. Thank you to both counsels for your helpful arguments today.
judges: THOMAS, KOH, Silver